UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| **Costas Ombuna and Jazzlyn Brown,** | Case No. |
| Plaintiffs, | |
| v. | |
| **Cody Johnson, C. Peterson, John Doe 1-10,** | **COMPLAINT**<br>**(WITH JURY DEMAND)** |
| Defendants. | |

_____

## INTRODUCTION

1. The Defendants, a group of Minneapolis Police Officers, arrested Plaintiffs Costas Ombuna and Jazzlyn Brown while they were returning to their home in South Minneapolis after taking their child to safety during the unrest following the murder of George Floyd. Ombuna and Brown were not doing anything unlawful, yet the Defendants zip-tied them, threw them in a police vehicle, and drove them to a parking lot where they could be transported with a mass of other arrestees to Hennepin County Jail. Ombuna and Brown were compliant and non-violent at all times during this incident, yet the Defendants needlessly sprayed them in the face with chemical irritants. The Defendants then charged them with rioting and

1

other crimes despite knowing that there was no probable cause to suspect them of those crimes. Ombuna and Brown now seek redress for these violations of their constitutional rights.

## JURISDICTION AND VENUE

2. Plaintiffs base their claims on 42 U.S.C. § 1983. This Court therefore has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3. This Court has personal jurisdiction over Defendants because they reside and do business in Minnesota.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the Defendants are citizens of the State and District of Minnesota. Further, the unlawful actions alleged herein occurred within the City of Minneapolis, Hennepin County, Minnesota.

## PARTIES

5. Plaintiff Costas Ombuna is presently a resident of Illinois. At the time of the events that gave rise to this case, he was a resident of Minnesota.

6. Plaintiff Jazzlyn Brown is presently a resident of Illinois. At the time of the events that gave rise to this case, she was a resident of Minnesota.

7. Defendant Cody Johnson was a Minneapolis Police Officer at the time of the events giving rise to this case. Ombuna's charging documents list "C. Johnson" as his arresting officer. Upon information and belief, that is Defendant Johnson. At all times relevant herein, Defendant Johnson acted under color of state law.

8. Defendant C. Peterson was a Minneapolis Police Officer at the time of the events giving rise to this case. Brown's charging documents list "C. Peterson" as her arresting officer. Plaintiffs will amend the complaint upon confirmation of Defendant Peterson's first name. At all times relevant herein, Defendant Peterson acted under color of state law.

9. Defendants John Doe 1-10 are Minneapolis Police Officers involved in the events that gave rise to this case. Because no Officers wrote a police report for the incident and arrest giving rise to this case, Plaintiffs are presently without knowledge of the identity of the officers responsible for the acts that give rise to their claims. They intend to amend their complaint to reflect the identity of other Officers upon receipt of that information in discovery.

10. Because Plaintiffs have not been given access to documentation regarding the incidents giving rise to their Complaint, including body-worn camera video, they refer herein to all acts as being done collectively by all Defendants, and do so with the purpose of alleging that all named Defendants were legally responsible for all conduct alleged herein. This is, in part, due to the constitutional obligation of state actors to intervene to stop or prevent violations of constitutional rights that occur in their presence. Plaintiffs will amend their complaint should additional evidence become available that allows for them to identify the individuals responsible for the specific actions that are alleged herein.

## FACTUAL ALLEGATIONS

11. Plaintiffs Costas Ombuna and Jazzlyn Brown are a couple who have a child together.

12. In May 2020, the three of them lived together in South Minneapolis.

13. When Minneapolis Police Officer Derek Chauvin murdered George Floyd near the intersection of 38th Street and Chicago Avenue in South Minneapolis on May 25, 2020, the ensuing demonstrations against the Minneapolis Police Department and police misconduct against African-

American citizens more broadly started and were based just blocks from the house where Ombuna and Brown lived.

14. In the following days, protests mostly shut down the area around their house. As the Minneapolis Police Department's response to these protests intensified, there was a large police presence in their neighborhood.

15. Some developments over the course of those days caused Ombuna and Brown to feel less secure in their home and fear for their child's safety.

16. In particular, reports of white supremacists and right-wing agitators in their area caused them significant concern, especially because they are both people of color, as is their child.

17. On May 30, 2020, Ombuna and Brown arranged to take their child to Brown's mother's house in the suburbs, where they felt the child would be safer.

18. That afternoon, they drove out to Brown's mother's house and dropped off their child.

19. They were fleeing dangerous circumstances in order to protect their child.

20. On the way back to their home in South Minneapolis, another car rear-ended them. The accident caused significant damage to the car, though they were still able to drive it.

21. Ombuna and Brown called 911 for assistance but dispatch told them there was nothing the police could do for them because of the ongoing unrest.

22. Ombuna and Brown tried to find a gas station where they could clean the broken glass out from inside their car so that they could safely pick up their child the next morning.

23. They kept running into road blocks or businesses that were closed, so they ended up driving back out of the city to reach a gas station where they could complete the necessary repairs on their car.

24. After they finished repairing and cleaning their car, they tried to get back to their home, but road blocks on Lake Street and Park Avenue made it virtually impossible to get to their house.

25. Eventually they found what they thought was an open stretch of street near Park Avenue that they turned onto, but then police officers emerged and forced them to turn around by shooting some type of projectile in the direction of their car.

26. They immediately complied with the police officers' orders and turned around.

27. They only drove for about one more block when they saw an open parking spot on the street near Longfellow Park, at or around the intersection of 34th Street and 36th Avenue.

28. Ombuna and Brown parked the car there with the intention of walking from that area directly to their home in order to comply with emergency curfew orders, and to protect themselves against any unsafe situations.

29. In the area where they parked their car, there were several people on the streets and sidewalks, including some assembled in large groups.

30. Roughly five seconds after Ombuna and Brown exited their vehicle and started to walk toward their home, a Minneapolis Police vehicle sped toward them and abruptly stopped near them.

31. Approximately six police officers, including Defendants Cody Johnson and C. Peterson, then leapt from the vehicle with firearms drawn and ordered Ombuna and Brown to get on the ground.

32. Ombuna and Brown complied with these orders and got on the ground.

33. The officers, including Johnson and Peterson, then zip tied their hands, threw them in the back of a police vehicle, took Brown's purse, and quickly drove away.

34. The Defendants arrested Ombuna and Brown without any probable cause to believe they were committing a crime, or any other legitimate law enforcement reason.

35. The Defendants did not detain or even approach any of the other people on the streets and sidewalks in the area.

36. None of the Defendants told Ombuna or Brown why they were under arrest, or what crime they were suspected of committing.

37. As the Defendants drove them away, Ombuna and Brown explained that they were obeying orders and were just trying to get to their home.

38. The Defendants in the vehicle did not care about this explanation and continued driving Ombuna and Brown away.

39. Eventually the vehicle stopped in a parking lot near Lake Street.

40. Ombuna told the Defendants that his zip ties had fallen off of his wrists and then handed them the tie.

41. The Defendants then forcefully pulled Ombuna out of the vehicle, pushed him against the vehicle, pulled his arms behind his back, and zip tied his hands again.

42. At no point during this interaction did Ombuna resist the officers' attempts to restrain him.

43. Despite Ombuna's compliance, at least one Defendant sprayed him in the face with a chemical irritant before covering his nose and mouth with a surgical mask.

44. While this was happening, another Defendant had removed Brown from the vehicle and she saw the excessive force being used against Ombuna.

45. She told the Defendants to stop being rough with Ombuna because he was not resisting.

46. When the Defendants sprayed Ombuna with the chemical irritant, they also sprayed Brown.

47. Not long after they had been sprayed with chemical irritant, Ombuna and Brown were loaded onto separate busses, which then transported them to Hennepin County Jail.

48. Jail booking records list the officer who arrested Ombuna as C. Johnson. On information and belief, that is Officer Cody Johnson.

49. Jail booking records list the officer who arrested Brown as C. Peterson. Plaintiffs have not been able to find Officer Peterson's first name.

50. The transporting officers listed for Ombuna and Brown were "SQD 1958" and "J. Brodin," respectively.

51. The charges listed on the jail records for both Ombuna and Brown were "Riot" and "Curfew Violation."

52. The Defendants charged Ombuna and Brown with crimes, without any probable cause to believe they had committed a crime, or any other legitimate law enforcement reason.

53. These are the only records of the arrest. No officer wrote a report detailing the circumstances that created probable cause for the arrests.

54. There was no probable cause for the arrests.

55. No reasonable officer could have believed that Ombuna or Brown was rioting.

56. No reasonable officer could have believed that Ombuna or Brown was violating the curfew, because the applicable curfew orders contained

exemptions for people fleeing dangerous circumstances, which is what caused Ombuna and Brown to be on the street that evening.

57. Despite having done nothing wrong, Ombuna and Brown spent the next 33 hours in jail.

58. Their jail records were discovered by some right-wing websites that published their names and photos along with other people arrested during the arrest, labeling them as members "Antifa."

59. This publicity has caused both Ombuna and Brown to fear for their safety.

60. Roughly one month after the incident, both Ombuna and Brown received notice that the criminal charges against them had been dropped.

## COUNT 1:

## UNLAWFUL ARREST – FOURTH AMENDMENT

## 42 U.S.C. § 1983

*As to all Defendants*

61. Plaintiffs incorporate the allegations set forth in each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

62. 42 U.S.C.§ 1983 prohibits, inter alia, state actors from depriving persons of any rights, privileges, or immunities secured by the United States

11

Constitution, including the right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment and incorporated through the Fourteenth Amendment. The right to be free from unreasonable searches and seizures includes the right of each person to be free from warrantless arrests, except in cases where the seizure is authorized by a warrant, or in certain specific circumstances when warrantless arrest is permitted.

63. The Defendants violated Plaintiffs' rights to be free from false arrest under the Fourth Amendment by arresting them without probable cause.

64. The rights and state of the relevant law, as described above, was clearly established on May 30, 2020.

65. As a direct and proximate result of the individual Defendants' acts and omissions, Plaintiffs have been injured, suffering severe mental and emotional pain, short- and long-term emotional injury, unlawful search, dignitary harm, discomfort, embarrassment, humiliation, fear, anxiety, apprehension, sleeplessness, a generally diminished sense of personal and family safety, increased fear of law enforcement, attorneys' fees, the costs of bringing suit, and more.

66. The Defendants, as a result of their illegal behavior, are liable to Plaintiffs for the above-mentioned injuries, as well as punitive damages. Total damages suffered by Plaintiffs are to be further determined at trial.

## COUNT 2:

## MALICIOUS PROSECUTION – FOURTH AMENDMENT

## 42 U.S.C. § 1983

*As to all Defendants*

67. Plaintiffs incorporate the allegations set forth in each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

68. 42 U.S.C.§ 1983 prohibits, inter alia, state actors from depriving persons of any rights, privileges, or immunities secured by the United States Constitution, including the right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment and incorporated through the Fourteenth Amendment. The right to be free from unreasonable searches and seizures includes the right of each person to be free from seizure that is caused by the malicious prosecution for crimes that the prosecuting official has no probable cause to believe that person committed.

69. The Defendants initiated the prosecution of Plaintiffs without probable cause that they committed the crimes with which they were charged.

70. The initiation of the prosecution of Plaintiffs resulted in their seizure, in the form of their detention by the Defendants and subsequent incarceration in Hennepin County Jail.

71. To the extent that the law requires such a showing, the Defendants' motive in initiating the prosecution of Plaintiffs for these crimes was malicious. Specifically, by the time the Defendants charged Plaintiffs with Riot and Curfew violations, they knew that neither Plaintiff had committed either of those crimes, or at minimum acted with reckless disregard for the truth in concluding that they had.

72. The prosecution of Plaintiff ended without a conviction when the charges against them were dismissed.

73. The rights and state of the relevant law, as described above, was clearly established on May 30, 2020.

74. As a direct and proximate result of the individual Defendants' acts and omissions, Plaintiffs have been injured, suffering severe mental and emotional pain, short- and long-term emotional injury, unlawful search,

dignitary harm, discomfort, embarrassment, humiliation, fear, anxiety, apprehension, sleeplessness, a generally diminished sense of personal and family safety, increased fear of law enforcement, attorneys' fees, the costs of bringing suit, and more.

75. The Defendants, as a result of their illegal behavior, are liable to Plaintiffs for the above-mentioned injuries, as well as punitive damages. Total damages suffered by Plaintiffs are to be further determined at trial.

## COUNT 3

## EXCESSIVE FORCE – FOURTH AMENDMENT

## 42 U.S.C. § 1983

### *As to all Defendants*

76. Plaintiffs incorporate the allegations set forth in each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

77. 42 U.S.C.§ 1983 prohibits, inter alia, state actors from depriving persons of any rights, privileges, or immunities secured by the United States Constitution, including the right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment and incorporated through the Fourteenth Amendment. The right to be free from

unreasonable searches and seizures includes the right of each person to be free from excessive force.

78. The Defendants used excessive force against both Plaintiffs when removing them from the police vehicle and spraying them with a chemical irritant.

79. These uses of force were excessive because they were not reasonably necessary for any legitimate law enforcement purpose. Specifically, neither Plaintiff was violent, resisting or obstructing the Defendants' actions, or attempting to flee. Neither Plaintiff presented any risk to the Defendants or any other individual at the time the Defendants used force against them.

80. The rights and state of the relevant law, as described above, was clearly established on May 30, 2020.

81. As a direct and proximate result of the individual Defendants' acts and omissions, Plaintiffs have been injured, suffering physical injuries and pain, severe mental and emotional pain, short- and long-term emotional injury, unlawful search, dignitary harm, discomfort, embarrassment, humiliation, fear, anxiety, apprehension, sleeplessness, a generally

diminished sense of personal and family safety, increased fear of law enforcement, attorneys' fees, the costs of bringing suit, and more.

82. The Defendants, as a result of their illegal behavior, are liable to Plaintiffs for the above-mentioned injuries, as well as punitive damages. Total damages suffered by Plaintiffs are to be further determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs requests that this Court enter judgment in favor of Plaintiffs and against Defendants, as follows:

1. An order declaring that Defendants' actions and practices violated the Constitution;

2. An order declaring that Defendants' actions and practices injured Plaintiffs;

3. An order granting Plaintiffs judgment against Defendants;

4. An order granting Plaintiffs all relief available in law and equity;

5. An order granting Plaintiffs compensatory damages;

6. An order granting Plaintiffs emotional distress damages;

7. An order granting Plaintiffs punitive damages;

8. An order granting Plaintiffs pre- and post-judgment interest;

9. An order for Defendants to pay Plaintiffs' costs, interest, and attorneys' fees;

10. An order for Defendants to pay any and all further relief available, such as any relief the Court may consider equitable and/or appropriate.

*Plaintiffs demand a jury trial.*

Dated:  August 22, 2022              **MADIA NEWVILLE LLC**

/s/ Sam Kramer
Samuel Kramer, MN #400743
Joshua A. Newville, MN # 395221
1850 IDS Center, 80 S. 8th St.
Minneapolis, MN 55402
Ph: 612.349.2720 | F: 612.235.3357
Email: sjkramer@madianewville.com
**Attorneys for Plaintiffs**